# United States Court of Appeals for the Federal Circuit

---

**DONALD R. MASIAS,**

*Petitioner-Appellant,*

**v.**

**SECRETARY OF HEALTH AND HUMAN SERVICES,**

*Respondent-Appellee.*

---

2010-5077

---

Appeal from the United States Court of Federal Claims in case no. 99-VV-697, Senior Judge Robert H. Hodges, Jr.

---

Decided: March 15, 2011

---

ROBERT T. MOXLEY, Robert T. Moxley, P.C., of Cheyenne, Wyoming, argued for petitioner-appellant.

CATHARINE E. REEVES, Assistant Director, Torts Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for respondent-appellee. With her on the brief were Tony West, Assistant Attorney General, TIMOTHY P. GARREN, Director, MARK W. ROGERS, Deputy Director, and GABRIELLE M. FIELDING, Assistant Director.

———————————————————

Before BRYSON, SCHALL, and PROST, *Circuit Judges*.

SCHALL, *Circuit Judge*.

This case involves a dispute over the proper calculation and award of attorneys' fees under the National Childhood Vaccine Injury Act, 42 U.S.C. §§ 300aa-10 to -34 (2000) ("Vaccine Act" or "Act"). The Vaccine Act established the National Vaccine Injury Compensation Program ("Vaccine Program" or "Program"). Petitioner-Appellant Donald R. Masias ("Masias" or "petitioner") sought compensation under the Vaccine Program, alleging that he sustained injuries as a result of the administration of Hepatitis B vaccines. Ultimately, Masias's claim was resolved through a negotiated settlement which resulted in a payment to Masias without any determination by the special master on the issue of causation. Judgment was entered accordingly on February 1, 2008.

In due course, Masias filed a claim for attorneys' fees under the Act. Subsequently, on March 12, 2009, the special master issued a Decision on Interim Attorneys' Fees and Costs, awarding Masias $42,065.50 in attorneys' fees and $6,302.15 in costs for the merits phase of the litigation, amounts that the special master determined were not reasonably in dispute. *Masias v. Sec'y of Health & Human Servs.*, No. 99-697V, 2009 WL 899703, at *1 (Fed. Cl. Mar. 12, 2009) ("*Interim Decision*"). This resulted in an interim award of attorneys' fees and costs in the total amount of $48,367.65, with judgment being entered accordingly. *Id.* at *5. The special master deferred until his final decision resolution of the remaining fees and costs issues in the case. *Id.* at *3. Most impor-

tant among these was the hourly rate for work performed by Masias's attorney, Robert T. Moxley. *Id.*[1]

On June 12, 2009, the special master issued his final Decision on Attorneys' Fees and Costs. *Masias v. Sec'y of Health & Human Servs.*, No. 99-697, 2009 WL 1838979 (Fed. Cl. June 12, 2009) ("*Fees Decision*"). In it, he awarded Masias an additional $19,035.25 in attorneys' fees and an additional $14,873.32 in costs. *Id.* at *43. This resulted in a final award of attorneys' fees and costs in the total amount of $33,908.57 beyond what Masias already had been awarded in the *Interim Decision*.[2] The award of attorneys' fees in the *Fees Decision* was based, in part, on the special master's determination that Mr. Moxley was entitled to be compensated for his services in 2008 at an hourly rate of $220. *Id.* at *12.

Masias timely filed a motion for review of the special master's decision with the United States Court of Federal Claims. On December 10, 2009, the court denied the motion for review and affirmed the special master's decision. *Masias v. Sec'y of Health & Human Servs.*, No. 99-697V, slip op. at 11 (Fed. Cl. Dec. 10, 2009). Shortly thereafter, the court entered judgment in favor of Masias in the amount of $33,908.57, the amount for fees and costs that the special master found to be due in the *Fees*

---

[1]    The special master calculated the interim award of attorneys' fees due to Masias by applying rates previously awarded to Mr. Moxley in published decisions ($160 to $215 per hour, depending on when Mr. Moxley worked) to an undisputed number of hours Mr. Moxley worked in this case. *Interim Decision*, 2009 WL 899703, at *4, *5 app.

[2]    In the *Fees Decision*, the special master acknowledged that he had inadvertently failed to include 0.8 hours of legal assistant time in the *Interim Decision* award; he therefore awarded Masias an additional $80 for this charge. *Fees Decision*, 2009 WL 1838979, at *36.

*Decision*. Masias now appeals the decision of the Court of Federal Claims denying his motion for review. We affirm.

BACKGROUND

I.

The Vaccine Act authorizes special masters to issue decisions with respect to "whether compensation is to be provided under the [Vaccine] Program and the amount of such compensation." 42 U.S.C. § 300aa-12(d)(3)(A). When, as here, "compensation" is awarded under the Act for a vaccine-related injury or death, the petitioner is entitled to receive "reasonable attorneys' fees" and other costs. 42 U.S.C. § 300aa-15(e)(1). In addition, unlike most fee-shifting statutes, even if the petitioner is not awarded "compensation" under the Act, reasonable attorneys' fees and other costs may be awarded if the special master or the court determines that the petition was brought "in good faith" and that there was a "reasonable basis" for the claim. *See id.*[3] Because Masias was

---

[3]  Section 300aa-15(e)(1) provides:
In awarding compensation on a petition filed under section 300aa-11 of this title the special master or court shall also award as part of such compensation an amount to cover--
    (A) reasonable attorneys' fees, and
    (B) other costs,
incurred in any proceeding on such petition. If the judgment of the United States Court of Federal Claims on such a petition does not award compensation, the special master or court may award an amount of compensation to cover petitioner's reasonable attorneys' fees and other costs incurred in any proceeding on such petition if the special master or court determines that the petition was brought in good faith and there was a reasonable basis for the claim for which the petition was brought.

awarded compensation for his vaccine injury, there is no dispute that the special master was required to award attorneys' fees and costs in this case.

## II.

To determine the attorneys' fees due to Masias, the special master began with the lodestar approach. We have endorsed the use of the lodestar approach to determine what constitutes "reasonable attorneys' fees" under the Vaccine Act. *Avera v. Sec'y of Health & Human Servs.*, 515 F.3d 1343, 1347-48 (Fed. Cir. 2008). Under this approach, the court first makes an initial estimate of a reasonable attorneys' fee by "'multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate.'" *Id.* (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)). The court can then adjust the fee award upward or downward based on other specific findings. *Avera*, 515 F.3d at 1348.

In *Avera*, we held that, in general, attorneys' fees under the Vaccine Act should be determined using the forum rate for the District of Columbia in the lodestar calculation, rather than the rate in the geographic area of the petitioner's attorney. *Id.* at 1348-49. However, we adopted an exception to this rule established by the D.C. Circuit in *Davis County Solid Waste Management & Energy Recovery Special Service District v. United States Environmental Protection Agency*, 169 F.3d 755, 758 (D.C. Cir. 1999). *Avera*, 515 F.3d at 1349-50. According to the *Davis County* exception, also referred to as the *Davis* exception, the court should use the rates of the attorney's locality "'where the bulk of [an attorney's] work is done outside the jurisdiction of the court and where there is a *very significant* difference in compensation favoring D.C.'" *Avera*, 515 F.3d at 1349 (quoting *Davis County*, 169 F.3d at 758).

To decide if the *Davis County* exception applied in this case, the special master first sought to determine the hourly rate for attorneys in Cheyenne, Wyoming, where Mr. Moxley practices. After reviewing several attorney affidavits and statements in various federal and state court decisions with respect to reasonable rates for attorneys in Wyoming, the special master found that the local rate for Mr. Moxley's services was $160 per hour for 1999, increasing proportionately through 2008 to $220 per hour. *Fees Decision*, 2009 WL 1838979, at *12-13, *31, app. tbl.6. The special master then determined that attorneys with similar experience providing services in the Vaccine Program in Washington, D.C. would charge $250 to $375 per hour, and that, within this range, Mr. Moxley would likely receive $350 per hour if he practiced in Washington, D.C. *Id.* at *23-25. In arriving at this D.C. rate, the special master rejected Masias's argument that the Laffey Matrix, a matrix of different hourly rates in Washington, D.C., should apply. *Fees Decision*, at *13-15, *16-25 (citing *Laffey v. Nw. Airlines, Inc.*, 572 F.Supp. 354 (D.D.C. 1983), *aff'd in part, rev'd in part on other grounds*, 746 F.2d 4 (D.C. Cir. 1984) *overruled by Save Our Cumberland Mountains, Inc. v. Hodel*, 857 F.2d 1516 (D.C. Cir. 1988) ("We do not intend, by this remand, to diminish the value of the fee schedule compiled by the District Court in *Laffey*.")). Although noting that many courts have awarded attorneys' fees based on the Laffey Matrix, the special master found he was not bound to follow the matrix since Masias did not establish that Mr. Moxley provided services "similar" to attorneys under the Laffey Matrix, as required by *Blum*. *Fees Decision*, 2009 WL 1838979, at *16-25; *see Avera*, 515 F.3d at 1348 ("In *Blum*, the Supreme Court explained that a reasonable hourly rate is 'the prevailing market rate,' defined as the rate 'prevailing in the community for similar services by

lawyers of reasonably comparable skill, experience, and reputation.'" (quoting *Blum*, 465 U.S. at 896 n.11)).

After calculating that there was a 59 percent differential between the rates for "similar" legal services in Cheyenne, Wyoming and the appropriate forum, the District of Columbia, the special master found this difference to be "very significant." *Fees Decision*, 2009 WL 1838979, at *26. The special master also found that there was no evidence that Mr. Moxley performed any work on the case within the District of Columbia. *Id.* at *25. Having found the two requirements of the *Davis County* exception met, the special master awarded Masias attorneys fees for Mr. Moxley's services at the Cheyenne, Wyoming rate of $160 to $220 per hour. *Id.* at *31.

Since the *Interim Decision* had addressed the fees due to Masias for time spent by Mr. Moxley on the merits phase of the case, using rates identical to those deemed to be reasonable rates in the *Fees Decision*, the only fees to which Masias still could be entitled were for Mr. Moxley's work seeking attorneys' fees. *Id.* at *32-35. Noting that the rates he had found applicable were approximately 50 percent of the rates requested by Masias, the special master calculated the fees due by reducing the total amount of the request by 50 percent to arrive at the amount of $19,035.25.[4] *Id.* at *35.

A petitioner can request review of a special master's decision by the Court of Federal Claims under 42 U.S.C. § 300aa-12(e). As noted above, Masias's request for review was denied and the opinion of the special master affirmed. Masias then appealed. We have jurisdiction

---

[4]   The special master excluded from his calculation time Mr. Moxley spent preparing a summary judgment motion, having found the filing unnecessary, duplicative, and excessive. *Fees Decision*, 2009 WL 1838979, at *35.

pursuant to 28 U.S.C. § 1295(a)(3) and 42 U.S.C. § 300aa-12(f).

DISCUSSION

Under the Vaccine Act, we review a decision of the special master under the same standard as the Court of Federal Claims and determine if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 42 U.S.C. § 300aa-12(e)(2)(B), *Markovich v. Sec'y of Health & Human Servs.*, 477 F.3d 1353, 1355-56 (Fed. Cir. 2007). Each standard applies to a different aspect of the judgment. *Munn v. Sec'y of Dep't of Health & Human Servs.*, 970 F.2d 863, 870 n.10 (Fed. Cir. 1992). We review fact findings by the special master under the arbitrary and capricious standard. *Id.* Arbitrary and capricious is a highly deferential standard of review. *Hines v. Sec'y of Dep't of Health & Human Servs.*, 940 F.2d 1518, 1528 (Fed. Cir. 1991). "If the special master has considered the relevant evidence of record, drawn plausible inferences and articulated a rational basis for the decision, reversible error will be extremely difficult to demonstrate." *Id.* We review discretionary rulings under the abuse of discretion standard. *Munn*, 970 F.2d at 870 n.10. "[N]ot in accordance with law" refers to the application of the wrong legal standard; the application of the law is reviewed *de novo*. *See Markovich*, 477 F.3d at 1355-56.

I.

Masias presents several arguments on appeal. First, he contends that the Federal Circuit erred in *Avera* when it adopted the *Davis County* exception to the forum rule and that the Laffey Matrix should have been applied in this case.

Masias argues that the adoption of the *Davis County* exception in *Avera* was motivated to prevent "windfalls" to petitioners, and that this reasoning was undermined by *Richlin Security Service Co. v. Chertoff*, 553 U.S. 571 (2008), which was decided after *Avera*. In *Richlin*, the Supreme Court held that reimbursement for paralegal time to a prevailing party under the Equal Access to Justice Act should be made at "prevailing market rates," not at the "reasonable cost" to the attorney. *Id.* at 576-78, 590.

We do not view *Richlin* as having undermined *Avera*'s adoption of the *Davis County* exception. The Supreme Court's adoption of market rates for paralegal fees is not contrary to *Avera*. As seen, in *Avera* we determined that one market rate, the forum rate, should generally apply for attorneys' fees but that, in certain circumstances, another market rate, the locality rate, should apply. Thus, *Avera* remains binding precedent until it is over-turned by the Supreme Court or by this court *en banc*. *Barclay v. United States*, 443 F.3d 1368, 1373 (Fed. Cir. 2006); *Sacco v. Dep't of Justice*, 317 F.3d 1384, 1386 (Fed. Cir. 2003); *McAllister v. Sec'y of Health & Human Servs.*, 70 F.3d 1240, 1242 (Fed. Cir. 1995).[5] The panel could, of course, recommend to the full court that it take this case *en banc* to reconsider *Avera, see* Federal Circuit Rule 35(a)(1) (2010); *Henderson v. Shinseki*, 589 F.3d 1201, 1203 (Fed. Cir. 2009), *rev'd*, 562 U.S. ___, 2011 WL 691592 (2011), but we decline to do so. *Avera* is thorough, well-reasoned, and has not been undermined.

---

[5] Acombined petition for panel rehearing and for rehearing *en banc* in *Avera* was denied in 2008. *Avera v. Sec'y of Health & Human Servs.*, No. 2007-5098 (Fed. Cir. Apr. 15, 2008).

Masias does not dispute (1) that Mr. Moxley performed the entirety of his work outside the District of Columbia, and (2) that the District of Columbia rates deemed applicable by the special master are significantly higher than the Cheyenne, Wyoming rates the special master determined applicable. Following *Avera* and *Davis County*, we hold that the special master did not err in not applying a Laffey Matrix rate and in awarding attorneys' fees at the lower Cheyenne rate.[6]

---

[6] *Avera*, we note, did not reach the question whether the Laffey Matrix should play any role in the determination of fees under the Vaccine Act in those cases where forum rates are utilized. We did, however, have occasion to reach that question in *Rodriguez v. Secretary of Health & Human Services*, No. 2010-5093 (Fed. Cir. Feb. 9, 2011). In *Rodriguez*, we addressed "whether the reasonable hourly rate for attorneys handling Vaccine Act cases in the District of Columbia should be determined by applying the Laffey Matrix, or whether the rate should be determined by considering a variety of factors, which may or may not include the Laffey Matrix." Slip op. at 6. In *Rodriguez*, the special master determined that Vaccine Act litigation is not analogous to "complex federal litigation," as described in *Laffey*, so as to justify use of the matrix rather than consideration of rates charged by skilled Vaccine Act practitioners. The special master therefore rejected the petitioner's claim that the Laffey Matrix sets a prima facie forum rate schedule for Vaccine Act attorneys' fees. *Id.* at 4, 6-8. Instead, to determine the forum rate for compensation of the petitioner's attorneys, the special master analyzed six separate pieces of evidence, including the Laffey Matrix. After doing so, the special master arrived at hourly rates for the petitioner's attorneys for work performed in the years 2006-2009. *Id.* at 4-5. On appeal, the petitioner argued that the special master had incorrectly distinguished litigation in which the Laffey Matrix has been applied from Vaccine Act litigation, and that she also improperly distinguished the Vaccine Act from other fee shifting statutes. *Id.* at 7. We

II.

Masias's second argument on appeal is an alternative to his contention that the special master should have applied the Laffey Matrix. As his alternative argument, Masias urges that the special master erred in determining that $160 to $220 per hour was the appropriate rate for Mr. Moxley's legal services. In making this argument, he appears to advance two contentions. His first contention is that, in determining the hourly rate component of attorneys' fees awards in Vaccine Act cases, special masters should employ a "federal specialty" rate. His second contention is that the special master erred in determining that, in this case, $160 to $220 was the appropriate hourly rate for Mr. Moxley's legal services in Cheyenne, Wyoming.

A.

First, Masias argues that the proper "locality" rate for Vaccine Act practice is the hourly rate attorneys in the locality charge for complex, federal litigation. Therefore, he contends, his attorneys' fees should be compensated at a "federal specialty" rate. According to Masias, defining the market for attorney services based solely on geography is overly simplistic because the financial demands of Vaccine Act practice exceed those of a "local" legal practice. Masias points to the Laffey Matrix as an indication that attorneys' fees in Washington, D.C. federal courts for complex litigation in 2008 were in the range of $440 to $465 per hour. He asserts that in Cheyenne, Wyoming,

---

affirmed the decision of the special master, concluding that she had not applied an incorrect legal standard, that she had considered appropriate evidence, and that she had fully explained the basis for determining the fee rates for the petitioner's attorneys. *Id.* at 9.

the rate for comparable complex federal litigation was $375 to $405 per hour.

Masias directs us to affidavits from attorneys who have participated in Vaccine Act litigation and argues that those affidavits support the proposition that Vaccine Program practice is complex. In support of the locality rates he proposes, he also relies on an affidavit by attorney Donald Schultz, who practices commercial, construction, and energy litigation in Cheyenne. Masias claims that his proposed federal specialty rate is also validated by the federal government's "locality pay" percentage for federal employees in Wyoming.[7] In further support of his argument for a federal specialty rate, Masias relies on two affidavits by economist Dr. Michael Kavanaugh: an August 14, 2006 affidavit originally filed in *Avera*, and a February 29, 2008 affidavit that focuses on identifying what Dr. Kavanaugh perceives as errors in *Avera* and the *Davis County* exception.[8]

---

[7]   Without specific citation, Masias asserts that the "locality pay" rate for Wyoming published by the Office of Personnel Management is 87.2 percent of that paid to federal employees in the District of Columbia. Pet'r's Br. 16 n.21. Masias argues that his proposed Cheyenne, Wyoming rates are an analogous percentage of Laffey Matrix rates.

[8]   For example, Dr. Kavanaugh stated that "the Vaccine Program, with only one forum, yet a small number of regular practitioners nationwide, is a prime example of a national market . . . [which] will have the same value everywhere and, clearly, the services of Program attorneys have the same value without regard to where they are produced." Pet'r's App. 94 ¶ 4. Dr. Kavanaugh also opined that "services provided by Mr. Moxley in the Vaccine Program have the same market value as services provided by big city attorneys, or attorneys in the District of Columbia area." Pet'r's App. 94-95 ¶ 6. We considered similar arguments in *Avera* (indeed, as noted above, the

We reject Masias's argument for a federal specialty rate as an attempt to circumvent *Avera*'s application of the *Davis County* exception. Further, we recognize, as we did in *Avera* and as the special master did in the *Fees Decision*, that in *Blum* the Supreme Court explained that a reasonable hourly rate for the service of a lawyer is "the prevailing market rate," defined as the rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum*, 465 U.S. at 896 n.11.

In the *Fees Decision*, the special master determined that Masias failed to establish that Mr. Moxley provided "similar services" to attorneys receiving Laffey Matrix rates. In reaching that determination, he found that the attorney affidavits provided by Masias in support of his claim that Vaccine Program litigation is complex were conclusory and that the affiants were "far from disinterested observers." *Fees Decision*, 2009 WL 1838979, at *20, *27.[9] He also found that Dr. Kavanaugh's February 29, 2008 affidavit was "largely misdirected in the sense that Dr. Kavanaugh disagrees with the Federal Circuit's decision in *Avera*." *Id.* at *25 n.16, *43. Finally, as discussed below, he determined that Mr. Schultz's rates were not a valid basis for comparison.

---

August 14, 2006 Kavanaugh affidavit was first presented in *Avera*), and concluded that, while forum rates apply in general, the *Davis County* exception applies where the bulk of the attorney's work is done outside of Washington, D.C. and where there is a *very significant* difference in compensation favoring the District of Columbia. *Avera*, 515 F.3d at 1349 (quoting *Davis County*, 169 F.3d at 758).

[9] The special master noted, however, that if future affiants explained the basis for their conclusion that Vaccine Program litigation is "complex," the issue may be resolved on a more fully developed record. *Fees Decision*, 2009 WL 1838979, at *22.

The special master reasoned that, as compared to the litigation in *Laffey*, Masias's case was less complex, did not present any novel issues of law, and did not require appellate review on the merits. The special master noted that in Vaccine Act litigation, evidence need not be presented under the Federal Rules of Evidence and that attorneys need only present their case to a trained special master, not a jury. *Id.* at *20-22.

Our review of the special master's factual findings is limited to a determination of whether the special master abused his discretion. We agree with the government that the special master considered the relevant evidence, drew plausible inferences, and articulated a rational basis for his finding that, under *Blum*, Masias did not establish that the services Mr. Moxley provided were "similar services" to those provided by the attorneys in *Laffey*. Having failed to establish this, Masias effectively failed to establish that he deserved compensation for attorneys' fees at rates awarded in complex federal litigation.

B.

As noted, Masias's second contention is that the special master erred in determining the appropriate hourly rate for Mr. Moxley's legal services in Cheyenne, Wyoming. Under § 300aa-15(e)(1), the special master was required to award "reasonable" attorneys' fees, and therefore the hourly rate he employed also had to be "reasonable." *See Saxton ex rel. Saxton v. Sec'y of Dep't of Health & Human Servs.*, 3 F.3d 1517, 1521 (Fed. Cir. 1993). The special master determined that a reasonable local rate for Mr. Moxley's services was $160 per hour for 1999, thereafter increasing proportionately through 2008. On that basis, the special master determined that $220 per hour was the appropriate rate for Mr. Moxley's legal services.

In arriving at that rate, the special master analyzed attorney affidavits presented by Masias and statements of reasonable rates for attorneys in Cheyenne from various federal and state legal decisions. With regard to the former, the special master was particularly influenced by a 2006 affidavit by Mr. Moxley in which he stated that he has charged his clients in Cheyenne $200 per hour since 2004, increasing to $250 per hour in September of 2006, which Mr. Moxley noted was "a very high hourly rate for the Cheyenne market." *Fees Decision*, 2009 WL 1838979, at *5. The special master also noted that Mr. Moxley has not been awarded more than $250 per hour for either his vaccine-related or other work. *Id.* at *7. Masias also presented the affidavits of other attorneys practicing in Cheyenne, Wyoming. As noted, among thes e affidavits was that of Donald Schultz. Mr. Schultz stated that he had "personal knowledge of hourly billing rates in the range of $375 to $405 per hour being charged currently to, and paid regularly by, private clients of Cheyenne, Wyoming and Jackson, Wyoming litigation attorneys who have experience akin to Mr. Moxley's and who are billing for their services in complex litigation matters pending in the District of Wyoming." J.A. 157. The special master was not persuaded by the Schultz affidavit because, in his view, Masias did not establish that the rates set forth by Mr. Schultz were a valid basis for comparison, given Mr. Schultz's experience in a large, national firm with multiple offices, whereas Mr. Moxley practices in a small firm with a single location. *Fees Decision*, 2009 WL 1838979, at *5, *7.

As is evident from the *Fees Decision*, the special master performed a detailed and careful analysis of the relevant affidavits, including the affidavit submitted by Mr. Moxley, and he thoroughly reviewed fee rates previously awarded to practitioners in similar localities. We cannot

say his decision to give little weight to the several affidavits was arbitrary, capricious, or an abuse of discretion.

Masias disputes the special master's reliance on statements of reasonable rates for attorneys in Cheyenne, Wyoming from various legal decisions, arguing that court-derived hourly rates do not define a market.[10]  Among the decisions considered by the special master, *Fees Decision*, 2009 WL 1838979, at *6, were several arising out of cases in the Vaccine Program where hourly rates increased from $160 in 1999 (when Masias's claim was filed) to $200 in 2004.  *See Hart v. Sec'y of Health & Human Servs.*, No. 01-357V, 2004 WL 3049766, at *2-3 (Fed. Cl. Dec. 17, 2004) ($200 per hour to Mr. Moxley and his partner for work done in 2004); *Gallagher v. Sec'y of Dep't of Health*

---

[10]    Masias also argues that the special master's "'inquisitorial' mode of adjudication . . . deprived the petitioner and his counsel of procedural due process."  Pet'r's Br. 56.  Masias apparently is referring to what he claims was the special master's reliance on "the facts from widely-scattered case law as a substitute for evidence," and the special master's use of what he contends was "unverifiable information *dehors* the record" regarding the growing number of Program attorneys available to Vaccine Program claimants.  Pet'r's Br. 11-12, 28, 56-57.  Masias asserts that the special master took on the role of an adversary and adjudicated his claim for attorneys' fees and costs without allowing him an opportunity to challenge the evidence that the special master relied upon.  We reject this argument, as Masias has not established a violation of due process rights.  Masias was on notice of the special master's intent to rely on statements of reasonable rates for attorneys in Wyoming from legal decisions due to the special master's specific issuance of an Order inviting comments on *City of Gillette v. Hladky Construction, Inc.*, 196 P.3d 184, 213 (Wyo. 2008), and *Morrison v. Clay*, 149 P.3d 696, 702 (Wyo. 2006).  *Masias v. Sec'y of Health and Human Servs.*, No. 99-697 (Feb. 17, 2009) (order inviting comments from the parties).

*& Human Servs.*, No. 95-191V, 2002 WL 1488759 at *1, tbl. nn.1-2 (Fed. Cl. May 22, 2002) ($175 per hour to Mr. Moxley for work done in the early 2000s); *Barnes v. Sec'y of Health & Human Servs.*, No. 90-1101V, 1999 WL 797468, at *2-3 (Fed. Cl. Sept. 17, 1999) ($160 per hour to Mr. Moxley for work done in 1998); *Walker v. Sec'y of Dep't of Health & Human Servs.*, No. 90-1398V, 1992 WL 92243, at *1 n.2 (Fed. Cl. Apr. 10, 1992) ($100 per hour to Mr. Moxley for work done in the early 1990s); *Estabrook v. Sec'y of Dep't of Health & Human Servs.*, No. 90-752V, 1991 WL 225096, at *1 n.3 (Fed. Cl. Oct. 16, 1991) ($100 per hour to Mr. Moxley for work done in 1990). The special master also considered the fact that we upheld a special master's award of $200 per hour to Mr. Moxley in *Avera. See Avera*, 515 F.3d at 1349-50. In addition, the special master noted that an Order Amending the Judgment in *Avera* awarded petitioners an additional $69,003.50 in attorneys' fees, which, according to Mr. Moxley's calculations, represented an award of $250 per hour. *Fees Decision*, 2009 WL 1838979, at *6 (citing *Avera v. Sec'y of Health & Human Servs.*, No. 04-1385 (June 24, 2008) (Order Amending Judgment)).

Although acknowledging that decisions outside the Vaccine Program cannot consider circumstances relating to the Program, the special master found value in decisions by Wyoming courts in other legal contexts, including employment discrimination, class action litigation, and contracts, due to the judicial officials' knowledge about the local legal community. *Fees Decision*, 2009 WL 1838979, at *6-7, app. tbl.2. According to the special master, courts in Wyoming have awarded attorneys' fees ranging from $125 per hour in 1997 to, in one case, $400 per hour in 2008. *Id.* at *6. In his determination, the special master emphasized the decision of the Wyoming Supreme Court in *Morrison. Fees Decision*, 2009 WL

1838979, at *8, *12. In *Morrison*, the court affirmed the trial court's decision limiting out-of-state attorneys to an hourly rate of $200 in a case challenging an arbitration pursuant to a stock purchase agreement, as this represented a "reasonable rate" in Casper, Wyoming. *Morrison v. Clay*, 149 P.3d 696, 702 (Wyo. 2006).

We see no error in the special master's reliance on determinations relating to attorneys' fees in prior Vaccine Act cases and in other types of cases in Wyoming. *See Saxton*, 3 F.3d at 1519, 1521-22 (stating that it was in the special master's discretion to reduce the number of hours in fee request by 50 percent where analysis, including a "survey[ of] every fee award made since the beginning of the vaccine program," revealed petitioners' attorneys, on average, requested reimbursement for roughly twice as many hours as other firms handling multiple vaccine cases). Indeed, it was entirely reasonable for the special master to look to relevant prior decisions addressing hourly rates for legal services in Wyoming in order to determine the relevant "local" rate for Cheyenne, Wyoming.

In sum, because the special master considered the relevant evidence, drew plausible inferences, and articulated a rational basis for his decision, his determination that a reasonable locality rate for Mr. Moxley's services was $220 per hour was not arbitrary, capricious, or an abuse of discretion.[11]

## III.

Masias's third argument on appeal is that the Vaccine Act violates the Appointments Clause of the Constitution

---

[11] We have also considered, and reject, Masias's argument challenging the special master's award of costs in the amount of $19,035.25.

because it authorizes special masters to issue decisions without affording an opportunity for *de novo* review by Court of Federal Claims judges.[12]  Masias argues that because the Court of Federal Claims does not review all special masters' decisions *de novo*, special masters are given the power to render final decisions on behalf of the United States without requiring the permission of other Executive officers.  Thus, he urges, they serve as principal, not inferior, officers of the United States within the meaning of the Appointments Clause.  Masias argues that this is unconstitutional because special masters are not subject to the appointment process for principal officers of the United States set forth in the Appointments Clause, which mandates appointment by the President with the advice and consent of the Senate for such officers.  Pet'r's Br. 52-55; Reply Br. 11-14.

The Appointments Clause of Article II of the Constitution reads as follows:

> [The President] shall . . . nominate, and by and with the Advice and Consent of the Senate, shall appoint Ambassadors, other public Ministers and Consuls, Judges of the supreme Court, and all other Officers of the United States, whose Appointments are not herein otherwise provided for, and which shall be established by Law: but the Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments.

---

[12]  As noted above, a decision of a special master is issued pursuant to 42 U.S.C. § 300aa-12(d)(3)(A).  Thereafter, if it is challenged, the Court of Federal Claims reviews it pursuant to 42 U.S.C. § 300aa-12(e)(2)(B) to determine whether it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."

U.S. Const. art. II, § 2, cl. 2.

The question we must decide is whether special masters qualify as "inferior officers" within the meaning of the Appointments Clause, for if they do, the provisions of the Vaccine Act authorizing them to issue decisions on compensation, 42 U.S.C. § 300aa-12(d)(3)(A), and providing for review of those decisions by the Court of Federal Claims, 42 U.S.C. § 300aa-12(e)(2)(B), are not unconstitutional. In *Edmond v. United States*, 520 U.S. 651 (1997), the Supreme Court described "inferior officers" under Article II, Section 2 of the Constitution as those "whose work is directed and supervised at some level by others," namely, principal officers, "who were appointed by Presidential nomination with the advice and consent of the Senate." 520 U.S. at 663. The Court stated that the mere fact that an officer is "charged with exercising significant authority on behalf of the United States" does not necessarily render the officer a "principal" officer. *Id.* at 662 ("The exercise of 'significant authority pursuant to the laws of the United States' marks, not the line between principal and inferior officer for Appointments Clause purposes, but rather, . . . , the line between officer and nonofficer.") (citing *Freytag v. Commissioner*, 501 U.S. 868, 881-82 (1991) and *Buckley v. Valeo*, 424 U.S. 1, 126 (1976)).

In *Edmond*, judges of the Coast Guard Court of Criminal Appeals were found to be inferior officers for two reasons. First, the Court pointed to the supervision over their work exercised by the General Counsel of the Department of Transportation in his capacity as Judge Advocate General of the Coast Guard, in which he was found to exercise "administrative oversight." 520 U.S. at

664.[13] The Court also pointed to the ability of the Court of Appeals for the Armed Forces to reverse the judges' decisions. 520 U.S. at 664-65, 666. In that regard, the Court acknowledged that the scope of review exercised by the Court of Appeals for the Armed Forces over the Coast Guard Court of Criminal Appeals was limited, but stated that the limitation upon review did not render the judges "principal officers." *Id.* at 665.

Special masters, like the judges of the Coast Guard Court of Criminal Appeals in *Edmond*, are directed and supervised by principal officers who have undergone a nomination and confirmation process.[14] Special masters are appointed by the judges of the Court of Federal Claims, 42 U.S.C. § 300aa-12(c)(1), who, in turn, are appointed by the President "by and with the advice and consent of the Senate," 28 U.S.C. § 171(a). At the same time, the special masters are administratively supervised by the judges of the Court of Federal Claims in a manner similar to the way in which the Judge Advocate General of the Coast Guard was found to exercise administrative oversight in *Edmond*. The Court of Federal Claims judges can remove special masters "for incompetency, misconduct, or neglect of duty or for physical or mental

---

[13] Subsequent to the Court's decision in *Edmond*, the Coast Guard was transferred from the Department of Transportation to the Department of Homeland Security. *See* 6 U.S.C. § 468(b); 10 U.S.C. § 801(1).

[14] At the time of the Court's decision in *Edmond*, the General Counsel of the Department of Transportation was "appointed by the President, by and with the advice and consent of the Senate." 49 U.S.C. § 102(e) (1994). As noted, the Coast Guard was subsequently transferred to the Department of Homeland Security. *See* 6 U.S.C. § 468(b); 10 U.S.C. § 801(1). The General Counsel of the Department of Homeland Security is also "appointed by the President, by and with the advice and consent of the Senate." 6 U.S.C. § 113(a).

disability or for other good cause shown." 42 U.S.C. § 300aa-12(c)(2); *see also Edmond*, 520 U.S. at 664 (noting the ability of a Judge Advocate General to remove a Court of Criminal Appeals judge). Second, decisions issued by the special masters are subject to review by the Court of Federal Claims. 42 U.S.C. § 300aa-12(d)(3), (e). In that regard, the court has jurisdiction to undertake a review of the record and may: (A) uphold the findings of fact and conclusions of law of the special master and sustain the special master's decision; (B) set aside any findings of fact or conclusions of law of the special master found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law and issue its own findings of fact and conclusions of law; or (C) remand the petition to the special master for further action in accordance with the court's direction. 42 U.S.C. § 300aa-12(e)(2).[15] Review of decisions of special masters by the Court of Federal Claims thus parallels the process for review of decisions of the Coast Guard Court of Criminal Appeals by the Court of Appeals for the Armed Forces, which was before the Court in *Edmond.* Contrary to Masias's argument, the fact that the review is limited does not mandate that special masters are necessarily "principal officers." *Edmond*, 520 U.S. at 665.

For the foregoing reasons, we conclude that special masters are "inferior officers" for purposes of the Appointments Clause. Consequently, the provisions of the Vaccine Act relating to their issuance of decisions and review of those decisions do not violate the Clause. Masias's constitutional challenge to the Act is without merit.

---

[15] Finally, this Court reviews findings of fact and conclusions of law of the United States Court of Federal Claims at a party's request. 42 U.S.C. § 300aa-12(f).

CONCLUSION

The decision of the Court of Federal Claims affirming the decision of the special master is affirmed.

**AFFIRMED**